## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|                                                    |     |
| -------------------------------------------------- | --- |
| UNITED STATES OF AMERICA,<br>ex rel. JON H. OBERG, | )<br>)<br>) |
|                                                    | )   |
| Plaintiffs,                                        | )   |
|                                                    | )   |
| v.                                                 | )   Civil Action No. 01:07-cv-960 |
|                                                    | )   |
| PENNSYLVANIA HIGHER EDUCATION<br>AUTHORITY, et al., | )<br>) |
|                                                    | )   |
| Defendants.                                        | )   |

DEC - 5 2012

CLERK, U.S. ... URT
ALEX... ...

### MEMORANDUM OPINION

This matter comes before the Court on remand from the
United States Court of Appeals for the Fourth Circuit (the
"Fourth Circuit"). The Fourth Circuit determined that the arm-
of-the-state analysis used in the Eleventh Amendment context
provides the appropriate legal standard in deciding whether an
entity is a "person" subject to suit under the False Claims Act
("FCA"), as there is a "'virtual coincidence of scope' between
the statutory inquiry under the FCA and the Eleventh Amendment
sovereign immunity inquiry". United States of America ex rel.
Jon H. Oberg v. Kentucky Higher Educ. Student Loan Corp., 681
F.3d 575, 580 (4th Cir. 2012)(internal citations omitted). The
Fourth Circuit adopted the four factors set forth in S.C. Dep't

of Disabilities & Special Needs v. Hoover Universal, Inc., 535
F.3d 300 (4th Cir. 2008), to be used in applying the arm-of-the-
state analysis. Defendants' Pennsylvania Higher Education
Assistance Agency ("PHEAA"), Kentucky Higher Education Student
Loan Corporation ("KHESLC"), Vermont Student Assistance
Corporation ("VSAC"), and Arkansas Student Loan Authority's
("ASLA") Motions to Dismiss are again before this Court to apply
the arm-of-the-state analysis.

In September 2007, Plaintiff Dr. Jon Oberg ("Oberg")
brought a qui tam action, on behalf of the United States,
against Defendants, alleging violations of the Federal False
Claims Act, 31 U.S.C.A § 3729 (West 2003). This Court dismissed
the complaint as to all four Defendants, holding that each
entity is a state agency and thus not subject to the FCA. In
June 2012, the Fourth Circuit vacated this Court's judgment and
remanded the case in order for this Court to apply the arm-of-
the-state analysis. See Oberg, 681 F.3d at 581. In the Fourth
Amended Complaint, filed in August 2012, Plaintiff again alleges
that Defendants submitted fraudulent claims under the Federal
Family Education Loan Program in violation of the FCA, in order
to obtain 9.5% special allowance payments ("SAP"). More
specifically, that Defendants used pre-October 1, 1993 tax-
exempt bond proceeds to unlawfully make or buy additional loans
that were guaranteed the minimum 9.5% yield. Plaintiff alleges

2

that such activity was prohibited by the repeal of the 9.5% SAP in 1993, and Department of Education regulations put in place for the purpose of phasing out the 9.5% SAPs. See Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66 (the "1993 OBRA"); 34 C.F.R. § 682.302 (1992); Dear Colleague Letter 96-L-186 (March 1, 1996).

Defendants are all entities created by their respective states for the purpose of generating higher educational opportunities, each with defined powers within their state code. Defendant PHEAA is a "public corporation and government instrumentality", created by the legislature of the Commonwealth of Pennsylvania for the purpose of "improv[ing] the higher educational opportunities of persons who are residents of this State and who are attending approved institutions of higher education, in this State or elsewhere, by assisting them in meeting their expenses of higher education..." 24 Pa. Stat. Ann. §§ 5101-5102 (West 2006). The Commonwealth of Pennsylvania's objective for PHEAA is stated as, "in all respects for the benefit of the people of the Commonwealth, for the improvement of their health and welfare, and for the promotion of the economy, and that such purposes are public purposes and the agency will be performing an essential governmental function." 24 Pa. Stat. Ann. § 5105.6 (West 2006).

3

All of PHEAA's powers and duties are established by state statute. Further, all of PHEAA's money is deposited into the Pennsylvania Commonwealth Treasury, including revenues. Id. § 5104. The Commonwealth exercises significant control over funds within the treasury, authorization is required before any use of the funds and is limited to carrying out the corporate purpose of the agency. See Id. Moreover, PHEAA must obtain the Governor's approval before borrowing any money and is subject to audit by the Commonwealth Auditor General. 24 Pa. Cons. Stat. §§ 5104(3), 5104(1.1), 5105.1, 5108 (West 2006). All of PHEAA's funds and property would revert to the Commonwealth in the event of dissolution. 24 Pa. Stat. Ann. § 5109 (West 2006).

PHEEA is operated by a board of directors comprised of the Secretary of Education, three members appointed by the Governor and confirmed by the Senate, eight members appointed by the President pro tempore of the Senate, and eight appointed by the Speaker of the House of Representatives of Pennsylvania. See 71 Pa. Stat. Ann. § 111.2(a)(1)(West 2012). The Commonwealth's Attorney General must review and approve all Commonwealth deeds, leases and contracts to be executed by PHEAA, and consent to PHEAA defending or initiating legal action. 71 Pa. Stat. Ann. §§ 732-204(c),(f)(West 2012). PHEAA is also required to make an annual report of its condition at year end, which is provided to

4

the Governor and legislature. 24 Pa. Stat. Ann. § 5108 (West 2006).

Defendant VSAC is a state created public non-profit corporation established to help residents of Vermont plan and pay for education or training beyond high school. See Vt. Stat. Ann. tit. 16, § 2821 (2004). VSAC is designated as "the state agency to receive federal funds assigned to the state of Vermont for student financial aid programs." Id. § 2823(c). As an "instrumentality of the state", the State of Vermont is required, by statute, to "support and maintain" VSAC. See Id. 2823(a). Upon termination of VSAC all of VSAC's property and net earnings would vest to the State. See Id. 2821(b). Further, VSAC is run by an 11-person board of directors, all of whom are either current elected Vermont officials or appointed by the Governor of Vermont. Id. §2831. Additionally, the State of Vermont may change the structure, organization or activities of VSAC, or terminate VSAC altogether. Id. § 2821(b). VSAC must also obtain the Governor's approval in order to issue debt obligations. Id. § 2823.

Defendant KHESLC was established by the Kentucky General Assembly as "an independent de jure municipal corporation and political subdivision of the Commonwealth of Kentucky created to perform essential governmental services". Ky. Rev. Stat. Ann. § 164A.020(3)(West 2006). The purpose of KHESLC's creation was to

carry out the public purpose and legislative intent of the
Commonwealth of Kentucky, "that the attainment by every citizen
of his or her educational goals will inure to the general
welfare, well-being, and productivity of the Commonwealth." Id.
§ 164A.010(1).

KHESLC is governed by a 15-member Board of Directors, all
of whom are appointed by the Governor of Kentucky. Id. §
164A.050(3)(a). Eight voting members are "chosen from the
general public residing in the Commonwealth of Kentucky; and
[s]even voting members of the board of directors of the Kentucky
Higher Education Assistance Authority appointed by the Governor
. . ." Id. Several commonwealth officials, including the
President of the council on Postsecondary Education, the
Secretary of the Finance and Administration Cabinet the
Secretary of Education and the State Treasurer of the
Commonwealth of Kentucky serve as ex officio voting members of
KHESLC. Id. § 164A.050(3)(c). The Governor of Kentucky
maintains the power to remove any of the eight directors chosen
from the general public for cause. See Id. § 164A.050(6).

As an instrumentality of Kentucky, KHESLC must obtain
General Assembly approval prior to issuing bonds, under certain
circumstances. See Id. § 164A.080. KHESLC is an agency
authorized to issue bonds, and is accountable to the State for
"all money received and disbursed during each fiscal year",

thus, KHESLC must submit an annual report and audit of its expenditures and investments to the State Governor, General Assembly, and to the Secretary of the Finance and Administration Cabinet. See Id. § 164A.170; § 42.545; § 45A.840(3)(West 2006). Like PHEAA and VSAC, upon dissolution all of KHESLC's property would vest in the Commonwealth of Kentucky. See Ky. Rev. Stat. Ann. § 164A.230 (West 2006).

Defendant ASLA is an authority established for the purpose of providing educational opportunities for the citizens of Arkansas. The Arkansas General Assembly empowered the Governor of the State, by proclamation, to establish ASLA, and pursuant to this authority ASLA was established as a state agency in 1977. Ark. Code Ann. § 6-81-102 (2007). State statute provides that the Defendant is "a public body politic and corporate," and "shall be the instrumentality of the state charged with a portion of the responsibility of the state to provide educational opportunities..." Id. § 6-81-102(c).

ASLA is a "state agency" operating exclusively to exercise those powers granted by the enactment of subchapter 81, and is governed by seven directors appointed by the Governor. See Id. § 19-4-801(2)(A); §§ 6-81-102(c),(d)(1). Many of ASLA's actions such as spending funds, entering into contracts, and issuing or selling bonds are subject to review and approval by Arkansas government officials. See Ark. Code Ann. § 19-4-802; §§ 19-11-

1005, 1006; §§ 6-81-107, 108 (2007). In addition, all ASLA funds are declared "cash funds" by statute. See Ark. Code Ann. § 19-4-801 (2010). Cash funds are "revenues of the state to be used as required and to be expended only for such purposes and in such manner as determined by law." Id. § 19-6-103.

Under the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States Government, is in violation of the act. See 31 U.S.C.A. § 3729 (2006). The United States Supreme Court, however, has held that state agencies are not construed as "persons" under the FCA, and therefore are not subject to liability under the act. Vermont Agency of Natural Resources v. U.S. ex. Rel. Stevens, 529 U.S. 765, 787-88 (2000). In order to determine whether an entity is in fact a state agency, so as to not be subject to the FCA, the arm-of-the-state analysis must be applied. U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp., 681 F.3d 575 (4th Cir. 2012).

"In applying the arm-of-the-state analysis, we consider four nonexclusive factors". Id. at 580. First, whether any judgment against the entity as Defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State. Oberg, 681 F.3d at 580. "The broader inquiry does not focus on whether funds are retained in a particular account of the State or in the general

8

fund of the State treasury. . ." S. Carolina Dept. of

Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d

300, 305 (4th Cir. 2008). Economic reality cannot be ignored in

this context; this court must look to the practical effect of a

judgment against each Defendant. See Ristow v. South Carolina

Ports Authority, 58 F.3d 1051, 1053-54 (4th Cir. 1995)(judgment

against Ports Authority could not be legally enforced against

the State but the practical effect of the State's treatment of

fiscal affairs of the Port Authority would implicate the State

treasury).

Defendant PHEAA deposits all of its money into the

Pennsylvania Commonwealth Treasury, specifically in the Higher

Education Assistance Fund. Accordingly, any judgment against

PHEAA would necessarily come out of state treasury funds. As

the Fourth Circuit noted in Hoover, it is irrelevant that

PHEAA's funds are retained in a separate account within the

treasury. Hoover, 535 F.3d at 305. The fact that the State

would be required to bear the burden of a judgment against PHEAA

in some financial capacity readily satisfies this factor.

Further, the fact that PHEAA uses its own revenues to

support its operations, in part, is not dispositive. PHEAA is a

public entity which generates revenue in order to support its

function. Even if these revenues were in fact used to pay a

judgment, Pennsylvania legislature would then have to

appropriate additional funds to support PHEAA, which would be to the detriment of the Commonwealth and would affect Pennsylvania taxpayers.

As for Defendant VSAC, the State of Vermont is required to support and maintain VSAC by statute, and thus would necessarily be burdened by a judgment against VSAC. "Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the Eleventh Amendment require that sovereign immunity attach to the agency" Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994). While there is no statute specifically requiring the State of Vermont to pay for a judgment against VSAC, there has also been no compelling evidence presented that indicates the Government would not be required to do so, literally or practically. State law makes clear that VSAC's revenues "shall not inure to the benefit of any person other than the state." Vt. Stat. Ann. Tit. 16 § 2821 (2004). VSAC, then, serves to benefit the State and any judgment against it would necessarily impact this function. The structure of VSAC, and its intertwining with the the State of Vermont, suggests a judgment against VSAC would have a detrimental impact on the Treasury and the Government of the State of Vermont. The Government and the taxpayers of the State of Vermont should not be required to absorb the repercussions of

10

a judgment against VSAC. Therefore, this court finds that VSAC satisfies the first factor of the arm-of-the-state analysis.

Defendant KHESLC's funds can be, and have been, redirected to other state agencies and initiatives upon request of the State, this fact alone weighs in favor of the first factor of the arm-of-the-state analysis. See Hoover, 535 F. 3d at 306. While Kentucky statutes make clear that the Commonwealth of Kentucky will not be responsible for financially backing KHESLC's student loans and bond obligations, and that such debts shall be payable by KHESLC alone, they do not indicate that KHESLC is an entity separate from the State or that it is solely responsible for paying any judgment entered against it. Ky. Rev. Stat. Ann. §§ 164A.080, 070, 010 (West 2006). To the contrary, Kentucky budgetary funds are allowed to be used to "restore such reserve fund or replacement fund to its contractually required level". Ky. Rev. Stat. Ann. § 164A.160 (West 2006). For this reason, this Court finds that the Treasury of the Commonwealth of Kentucky will be practically responsible for, and burdened by, a judgment entered against KHESLC.

Defendant ASLA has no authority to use any funds to pay a judgment; all of its funds are "cash funds" subject to control of the State. Where funds are restricted in their use, despite not being held within the Treasury, they are subject to audit

and budget planning, and thus any award that delves into those funds directly interferes with the State's fiscal autonomy. See Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 264 (4th Cir. 2005). Cash funds, by definition, are "revenues of the state to be used as required and to be expended only for such purposes and in such manner as determined by law". Ark. Code Ann. § 19-6-103 (2007). ASLA's funds are cash funds and thus funds of the State, therefore this Court finds that the State of Arkansas would be responsible for a judgment entered against ASLA.

The second factor in the arm-of-the-state analysis inquires into the degree of autonomy exercised by the entity, including such circumstance as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions. Oberg, 681 F.3d at 580. This factor focuses on the State's authorization and control of the entity's operations and less on the nature of the entity's operations. Hoover, 535 F.3d at 306. Each of the Defendants have directors appointed by the governor of their respective states, "[t]here can be no doubt that in this way the State, through its top officials, retains ultimate veto power over the actions of the Board . . ." Id. at 307. (stating that the all members of the board being elected by the Governor weighs in favor of second prong).

12

Defendant PHEAA's Board of Directors is comprised of elected officials, members elected by the Governor, and a few independent members, this, among other things, demonstrates an inherent veto power that the Commonwealth of Pennsylvania has over PHEAA. Further, despite PHEAA's limited ability to contract with third parties, be sued and sue in its own name, acquire and dispose of property and borrow money with approval - it remains primarily controlled by, and closely tied to, the Commonwealth. PHEAA is subject to various forms of oversight by the Commonwealth of Pennsylvania, and operational independence alone does not negate state control over an entities function.

PHEEA's funding is derived partially through its servicing activities and partially through appropriations, but all of its funds are subject to state control. PHEAA must obtain approval from the State Treasurer prior to the disbursement of funds, the Attorney General approves all legal transactions and litigation, the Auditor General may audit PHEAA's activities, and PHEAA makes annual reports to the Commonwealth. The assertion that PHEAA is akin to a private corporation is negated by these facts. Further, while PHEAA is funded partially through its servicing activities this fact alone does not preclude a finding that PHEAA is an arm of the Commonwealth of Pennsylvania. Therefore, PHEAA is subject to a sufficient amount of control by the Commonwealth of Pennsylvania.

Defendant VSAC is designated as a state agency and an instrumentality of the State by statute, this language clearly designates state ownership and control. The State maintains control through eight of eleven board members, all of which are elected Vermont officials or appointees of the Governor of Vermont. VSAC must file reports every two-years regarding its activities, submit annual reports to legislative officials on the financial status of the Vermont Higher Education Investment Plan, and the State may change or terminate VSAC at any time. VSAC is subject to state control to perform its most basic function, in order to issue debt obligations VSAC must first obtain the approval of the Governor. VSAC has made a sufficient showing of a lack of autonomy and control by the state of Vermont.

As to Defendant KHESLC, the Commonwealth of Kentucky maintains a presence within KHESLC through the ten members of the Board of Directors elected by the Governor of Kentucky. The Commonwealth of Kentucky also limits KHESLC's autonomy by requiring approval of certain bonds before issue, monitoring KHESLC's use of funds, and requiring submittal of an annual report and audit to various government officials. KHESLC must submit all personal services contracts to the Kentucky General Assembly for review, and must receive approval from the Government Contract Review Committee of the Legislative Research

14

Commission before entering into certain contracts. See Ky. Rev. Stat. § 45A.695, 45A.690, 45A.705 (West 2006). For these reasons, this Court finds that KHESLC is not an autonomous entity, and is subject to sufficient control by the Commonwealth of Kentucky.

Defendant ASLA's seven directors are each appointed by the Governor, ASLA was established by action of the Governor, and it functions under appropriations made by the General Assembly. The State of Arkansas also controls ASLA's actions through various required approvals that amount to veto powers. ASLA's powers and autonomy are limited by statute and confined to its Arkansas-specific educational mission. ASLA has some discretion over its operations, but the State is an ever present manager of ASLA's primary activity. In addition, ASLA, as a state agency of Arkansas, is subject to heavy restrictions on the use of its funds; its revenues are subject to state appropriation and oversight. Thus, this Court finds that ASLA is subjected to the control of the State of Arkansas.

We now turn to the third factor of the arm-of-the-state analysis, which considers whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns. Oberg, 681 F.3d at 580. This factor examines whether the entity "deals with local rather than statewide concerns", an entity's involvement with local concerns weighs

15

against an entity being an arm-of-the-state. Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002). Further, the Fourth Circuit has recognized that, "[h]igher education is an area of quintessential state concern and a traditional state governmental function." Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F. 3d 255, 265 (4th Cir. 2005). Each Defendant is involved with serving the needs of their respective states by performing the government function of creating higher educational opportunities through financing. Moreover, "[t]he absence of the power to tax is a strong indication that an entity is more like an arm-of-the-state than like a county or city, because that enablement gives an entity an important kind of independence." Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 264 (4th Cir. 2005)(quoting Kashani v. Purdue Univ., 813 F.2d 843, 846 (7th Cir. 1987))(internal quotations omitted). None of the Defendants have the power to tax.

Defendant PHEAA is primarily concerned with financing the higher education of the citizens of Pennsylvania. It was created to serve its function on a state-wide level. While some of PHEAA's services may extend to those citizens of Pennsylvania wishing to travel to another state in order to receive their education, or to citizens of other states in an ancillary capacity, these facts do not preclude a finding that PHEAA is

involved primarily with the concerns of the Commonwealth of Pennsylvania, as opposed to local concerns. Moreover, revenues derived from PHEAA's activities outside of Pennsylvania generate additional financial aid for the citizens of Pennsylvania. Therefore, this court finds that PHEAA is involved with state concerns.

Defendant VSAC operates a statewide higher education lending program. Specifically established "to provide opportunities for persons who are residents of Vermont to attend colleges or other postsecondary education institutions by awarding grants, guaranteeing, making, financing, and servicing loans of funds to students . . .", there can be no doubt as to VSAC's statewide focus. Vt. Stat. Ann. tit. 16, § 2821 (2004). VSAC does not discriminate based on choice of school, thus it finances loans out of state for Vermont residents as well as in state for Vermont citizens and others choosing to attend school in Vermont. Nonetheless, it is clear that VSAC is focused on statewide concerns.

Defendant KHESLC was created by the General Assembly of Kentucky because "providing higher education assistance to needy, qualified students is in the best interest of the Commonwealth and constitutes the implementation of a public purpose of statewide import of the Commonwealth." Ky. Rev. Stat. Ann. §§ 164A.010 (West 2006). This primary purpose is not

negated BY KHESLC's limited lending activity outside of the State, for the same reason it does not affect each of the other Defendants satisfaction of this factor. This court finds that KHESLC is involved with state concerns.

Defendant ASLA was created by the state of Arkansas as the instrumentality of the State charged with the responsibility of providing educational opportunities to citizens of Arkansas. Ark. Code Ann. § 6-81-102 (2007). In doing so, ASLA does not focus on any particular locality but instead serves the State of Arkansas as a whole. As an instrumentality of the State, ASLA is funded and regulated by the state of Arkansas. ASLA is involved with state concerns.

Lastly, we consider how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm-of-the-state. Oberg, 681 F.3d at 580. As to this factor this Court considers "the relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of the state courts on the question." Md. Stadium Auth., 407 F.3d at 265 (citations omitted).

As to Defendant PHEAA, Pennsylvania's Commonwealth Court, which has original jurisdiction of only those disputes in which the Commonwealth or its officers are a party, has included PHEAA in the definition of the "Commonwealth" for purposes of the

Court's original jurisdiction and the Commonwealth's sovereign immunity. Richmond v. PHEAA, 297 A.2d 544, 546-47 (Pa. Commw. Ct. 1972); 42 Pa. C.S.A. § 761 (2012). PHEAA is considered a state "agency" by the court. Id. Additionally, Pennsylvania state courts have concluded that PHEAA is an agency of the Commonwealth of Pennsylvania. See, e.g., PHEAA v. Barksdale, 449 A.2d 688, 689 (Pa. Super. Ct. 1982); PHEAA v. Reid, 15 Pa. D.& C.3d at 665-66.

Moreover, Pennsylvania statutes delegate to PHEAA the task of performing an essential government function in serving the people of Pennsylvania. 24 Pa. Stat. Ann. § 5105.6 (2006). The entities exemption from a variety of taxes further demonstrates its alter ego status. Id. § 5107; § 5105.6. PHEAA is also empowered with the ability to enact regulations that have binding force within the Commonwealth of Pennsylvania. See 24 Pa. Stat. Ann. 5104(6)(2006). The treatment of PHEAA by Pennsylvania courts, combined with the extensive legislation enacted to regulate the entity, establishes PHEAA's state agency status.

Defendant VSAC is designated as a state agency and instrumentality of the State, by statute. Its authority to borrow money and issue debt is limited to furthering its "governmental and public purpose." In addition, VSAC is provided various tax exemptions by the State of Vermont,

including exemptions on real and personal property, bonds, notes and other obligations. Vt. Stat. Ann. tit. 16, § 2825 (2004). No court in Vermont has had occasion to address VSAC's status as an agency of the State. However, as previously discussed there is a significant amount of Vermont legislation governing VSAC's operations, and the agency is treated as an entity of the State.

Defendant KHESLC is a political subdivision of the Commonwealth of Kentucky. The Commonwealth's statutes previously discussed were enacted to establish and operate KHESLC as an agency of the State. KHESLC is subject to various forms of oversight and regulation by the Commonwealth of Kentucky, as discussed above, indicating a close relationship with the State. While Kentucky courts have not had occasion to declare KHESLC a state agency per se, the Kentucky Court of Appeals has found that the Kentucky Housing Corporation, another state created independent de jure municipal corporation and political subdivision of Kentucky, is a "state agency" investor. Samuel T. Issac & Assocs., Inc. v. Federal Nat'l Mortg. Ass'n, 647 S.W.2d 495, 497 (Ky. Ct. App. 1982). This implies that Kentucky Courts consider such entities as state agencies. Based on KHESLC's status as a state created entity, and the numerous Kentucky statutes regulating KHESLC, this court concludes that the Commonwealth of Kentucky treats KHESLC as a state agency.

As for Defendant ASLA, the Arkansas Supreme Court has held the ASLA "is a state agency created by Act 873 of the 1977 Acts of Arkansas." Turner v. Woodruff, 689 S.W.2d 527, 528 (Ark. Sup. Ct. 1985). State statutes charge ASLA with the governmental responsibility of providing educational opportunities. Ark. Code Ann § 6-81-102(d)(2007). ASLA's status as a state agency allows it to promulgate regulations. Id. §§ 104, 102(e)(1). Moreover, the Attorney General of Arkansas defends ASLA in this matter, as well as other matters, representing the fact that ASLA is distinctly a part of the State of Arkansas' Government and is defended by its attorney as a result. ASLA is also subject to the Arkansas Freedom of Information Act, along with other state agencies. Ark. Code Ann. § 25-19-101, et seq. ASLA is treated as a state agency by the State of Arkansas.

For the aforementioned reasons this Court finds that each Defendant is an arm of each of their respective states. Accordingly, each Defendant is not a person who may be sued by a qui tam relator, Plaintiff in this action, under the False Claims Act. Plaintiff has therefore not stated a claim upon which relief can be granted against any of the Defendants, and Defendants Motions to Dismiss should be granted.

/s/
                              Claude M. Hilton
                              United States District Judge

Alexandria, Virginia
December 5, 2012