**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. JON H. OBERG, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Civil Action No. 1:07-cv-00960 |
| | ) ) | |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY AND VERMONT STUDENT ASSISTANCE CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORADUM OPINION**

THIS MATTER comes before the Court on Defendants'
Pennsylvania Higher Education Assistance Agency ("PHEAA") and
Vermont Student Assistance Corporation ("VSAC," collectively
"Defendants") Motion for Summary Judgment.

The Commonwealth of Pennsylvania created PHEAA in 1963 for
the purpose of improving the higher education opportunities of
Pennsylvanians.  24 Pa. Cons. Stat. Ann. § 5102.  PHEA does this
by making and financing loans, awarding grants and scholarships,
and providing financial aid services.

VSAC is a public nonprofit corporation created by the State
of Vermont in 1965 to perform a similar role as PHEAA.  Its

stated purpose is "to provide opportunities for persons who are residents of Vermont to attend colleges or other postsecondary education institutions" and "to provide career, education, and financial aid counseling and information services." Vt. Stat. Ann. tit. 16, § 2821.  Like PHEAA, VSAC makes and finances student loans and awards grants and scholarships, as well as other services to prepare students for higher education. Vermont has designated it as the "agency to receive federal funds assigned to the state of Vermont for student financial aid programs." Id. § 2823(c).

In September 2007, Plaintiff Dr. Jon Oberg brought a qui tam action, on behalf of the United States, alleging the Defendants defrauded the United States Department of Education in violation of the False Claims Act ("FCA").  The FCA prohibits any person from knowingly presenting a false or fraudulent claim to the United States government for payment or approval.  31 U.S.C.A § 3729.  This Court dismissed the Complaint as to the original four Defendants, holding that each entity is a state agency and thus not a "person" subject to the FCA.  In June 2012, the United States Court of Appeals for the Fourth Circuit vacated this Court's judgment and remanded the case in order for this Court to apply the arm-of-the-state analysis. U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 581 (4th Cir. 2012).  Upon remand, this Court again

dismissed the Complaint, finding the Defendants to be state agencies under the arm-of-the-state analysis. U.S. ex rel. Oberg v. Pa. Higher Educ. Auth., No. 01:07-CV-960, 2012 WL 6099086, at *9 (E.D. Va. Dec. 5, 2012).

Reviewing the case for a second time, the Fourth Circuit affirmed this Court's dismissal as to Defendant Arkansas Student Loan Authority as an arm of the State of Arkansas.[1] U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 142-45 (4th Cir. 2014). However, as to PHEAA and VSAC, the Court reversed and remanded for limited discovery on the issue of whether the Defendants constituted arms of the state. The parties have conducted discovery and the Defendants have each moved for summary judgment.

To determine whether a State-created entity operates independently of the State or is an arm of the State, the court considers four factors: first, whether a judgment against the entity will be paid by the State; second, the degree of autonomy exercised by the entity; third, whether the entity is involved with state concerns; and fourth, how the entity is treated under state law. S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008); see also Ram

---

[1] Before the appeal could be heard, Defendant Kentucky Higher Education Student Loan Corporation reached a settlement with Plaintiff. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 135 n.1 (4th Cir. 2014).

Ditta v. Md. Nat. Capital Park & Planning Comm'n, 822 F.2d 456, 457-58 (4th Cir. 1987).  Each of these four factors and how they relate to PHEAA and VSAC will be discussed in turn.

The first factor, would the State pay the judgment in this case, is not limited to direct liability but includes functional liability.  Oberg, 745 F.3d at 137.  Functional liability encompasses any judgment of which the State will ultimately bear the cost.  Hutto v. S.C. Ret. Sys., ___ F.3d ___, No. 13-1523, 2014 WL 6845450, at *4-7 (4th Cir. Dec. 5, 2014) (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 51 (1994)).  The Supreme Court has held that functional liability will be found where a judgment against the agency "would have had essentially the same practical consequences as a judgment against the State itself."  Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979); see also Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994) (quoting Morris v. Washington Metropolitan Area Transit Auth., 781 F.2d 218, 227 (D.C. Cir. 1986) (holding that functional liability will be found "[w]here an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency")).  Functional liability sets aside the formulaic

legal test and employs a practical analysis.  Ristow v. S.C.
Ports Auth., 58 F.3d 1051, 1053 (4th Cir. 1995).

A judgment against PHEAA would create functional liability
for the Commonwealth of Pennsylvania.  While the Fourth Circuit
held that this factor "weighs decidedly against holding that
PHEAA is an arm of the state," relying primarily on state law
dictating that PHEAA obligations shall not be binding upon the
State, Oberg, 745 F.3d at 138, this conclusion is not reached
following further factual development.  Although Pennsylvania
law directs that the Commonwealth will not be bound by any
obligation incurred by PHEAA, the functional liability inquiry
focuses on the practical consequences of a judgment.  It is
clear that a judgment against PHEAA would implicate the
Pennsylvania Treasury.  In fact, the Commonwealth retains
significant control over PHEAA's assets and generated revenue.
All of PHEAA's generated revenues are deposited in the
Pennsylvania Treasury, where they are earmarked and then
commingled and invested with the general fund.  PHEAA has no
authority to control the manner of investment of these funds and
all of PHEAA's expenditures must be approved by the Treasurer.
Tellingly, Pennsylvania regards PHEAA's finances as State money,
including it in Financial Reports in order to present an
accurate picture of Pennsylvania's finances.  Practically
speaking, PHEAA's money becomes State money.  Additionally, any

payment made directly by PHEAA would either reduce the amount of money available to achieve its statutory purpose, absent a special appropriation by the Pennsylvania legislature.  Thus, Pennsylvania would be functionally liable for a judgment against PHEAA and the first factor weighs in favor of holding PHEAA to be an arm of the state.

Similarly, a judgment against VSAC would create functional liability for the State of Vermont and possibly direct liability.  Like PHEAA, VSAC's assets are essentially State assets.  By statute, all of VSAC's net earnings inure to the benefit of the State.  Vt. Stat. Ann. tit. 16, § 2821.  VSAC has also not achieved financial independence from the State, - receiving $17 to $20 million per year in appropriations from the Legislature for student grants and raising revenue for administrative costs through State-approved activities.  And, as with PHEAA, any judgment paid directly by VSAC reduces the funding available to pursue its statutory purpose.  Thus, Vermont would be functionally liable for a judgment against VSAC.  Further, there is no statutory prohibition against the State directly paying a judgment against VSAC; there has simply never been an opportunity to discover whether or not Vermont would assume direct liability for a judgment against VSAC.  The first factor weighs in favor of holding VSAC to be an arm of the state

The second factor, the degree of autonomy exercised by the entity, focuses on the amount of control the State retains over the entity to direct its actions. Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 225 (4th Cir. 2001). The Court considers "who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions." Hoover Universal, Inc., 535 F.3d at 303. The Court will also consider the entity's ability to contract, sue and be sued, and purchase and sell property. Ram Ditta, 822 F.2d at 458. Consideration will be given to whether or not the State Attorney General represents the entity in legal matters. Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 264 (4th Cir. 2005).

The Fourth Circuit held that PHEAA's degree of autonomy presented a close question. Oberg, 745 F.3d at 139. After further factual development, Pennsylvania's control over PHEAA appears to be quite clear. PHEAA's 20-member Board is made up of only Pennsylvania officials, consisting of sixteen members of the Pennsylvania legislature, the Secretary of Education, and three gubernatorial appointees. This arrangement gives the Commonwealth significant control over the direction of PHEAA. Additionally, Pennsylvania retains several forms of veto power over PHEAA's actions. The Treasurer must, as with all agencies, approve all expenditures, the Governor must approve all of

PHEAA's debt issuances, and the Attorney General must approve
all PHEAA contracts in excess of $20,000.  The Attorney General
must also represent PHEAA in any litigation unless the Attorney
General delegates representation to PHEAA.  PHEAA must provide
the Pennsylvania Legislature with a report of its fiscal
condition annually and it is subject to audit by the
Pennsylvania Auditor General.  Ultimately, PHEAA is a statutory
creation and its activities are limited to those permitted by
statute; the Pennsylvania Legislature retains the power to
modify PHEAA's permitted activities at any time.  While PHEAA
has not required state assistance for its general operating
expenses recently, it only began successfully raising revenue
after 22 years of legislative appropriations, and assistance
would likely resume if it became necessary again.  Although
PHEAA's funding and partial fiscal autonomy weighs against a
finding that PHEAA is a state agency, most of the evidence shows
substantial Commonwealth control and supports finding PHEAA to
be an arm of Pennsylvania.

VSAC is subjected to a similar amount of control by the
State of Vermont.  VSAC's 11-member Board consists of five
gubernatorial appointees, one State senator chosen by the Senate
Committee on Committees, one member of the Vermont House of
Representatives chosen by the Speaker of the House, the State
Treasurer, and three members chosen by the Board itself.  The

Governor selects the Chair of the Board and may remove any of his or her appointees at any time. VSAC must provide the Vermont Secretary of Administration with an annual audit report and must file with the Legislature a biennial report of its activities. VSAC also submits an annual report on the financial status of the Vermont Higher Education Investment Plan. Although VSAC, like PHEAA, raises revenue and does not currently rely on the State for its administrative costs, Vermont would appropriate funds to VSAC to sustain it during a financially difficult time. Finally, Vermont has explicitly reserved the right to "alter, amend, repeal, or otherwise change [VSAC's] structure, organization, programs, or activities" at any time. Vt. Stat. Ann. tit. 16, § 2821(b). Thus, like PHEAA, VSAC's autonomy exists only as far as permitted by Vermont, and can be withdrawn at will. The evidence presented favors finding VSAC to be an arm of the state.

The third factor, whether the entity is involved with state concerns, focuses on the entity's activities. Hoover Universal, Inc., 535 F.3d at 303. "Non-state concerns" include both "local concerns" and out-of-state operations. Id. Higher education is, generally, "an area of quintessential state concern and a traditional state government function." Md. Stadium Auth., 407 F.3d at 265. In Cash, however, the Fourth Circuit held that a school board, with only a countywide jurisdiction, was only

locally concerned, despite education being a statewide concern.
Cash, 242 F.3d at 226.  Conversely, in Hoover Universal, Inc.,
the Fourth Circuit held that an insurance agency providing
insurance to many municipalities, counties, and school
districts, did not make its activities local because it did so
throughout the state.  Hoover Universal, Inc., 535 F.3d at 307-
08.

PHEAA engages in statewide activities.  The statutory
purpose of PHEAA is "to improve the higher educational
opportunities of persons who are residents of this State and who
are attending approved institutions of higher education, in this
State or elsewhere, by assisting them in meeting their expenses
of higher education."  24 Pa. Cons. Stat. Ann. § 5102.  PHEAA
may only engage in activities that pursue its statutory purpose.
Id. § 5104.  PHEAA's activities center around making higher
education affordable for Pennsylvanians and Pennsylvania
students, which is "clearly of legitimate state concern."
Oberg, 745 F.3d at 140.  PHEAA provides this service throughout
the Commonwealth of Pennsylvania like the insurance agency
in Hoover Universal, Inc. and is not limited to a particular
geographic area like the school board in Cash.  The fact that
PHEAA purchases, services, and guarantees loans to borrowers
throughout the country does not constitute non-state concerns
because this was done to generate earnings to return to

Pennsylvania students and defray their costs.  The third factor

weighs in favor of finding PHEAA to be a Pennsylvania agency.

     VSAC is similarly involved with state concerns.  Like

PHEAA, VSAC was created "to provide opportunities for persons

who are residents of Vermont to attend colleges or other

postsecondary education institutions" and "to provide career,

education, and financial aid counseling and information

services." Vt. Stat. Ann. tit. 16, § 2821.  To achieve this

purpose, VSAC is statutorily authorized to award grants and

scholarships, and makes and finances student loans. Id. §§

2841-2846, 2851-2854, 2823, 2861-2869.  Additionally, VSAC

conducts a myriad of services for students, such as educational

workshops, career fairs, financial aid services for Vermont

schools, and scholarship fundraising.  These programs are

administered on a statewide basis.  During fiscal years 2002

through 2007, VSAC made loans almost entirely to Vermont

residents or students of Vermont schools. Ultimately, VSAC

serves a vital role in the State of Vermont to advance, and make

accessible, higher education, a strong state concern.  The third

factor supports finding agency status for VSAC.

     The fourth factor, how the entity is treated under state

law, focuses on the nature of the entity and its relationship

with the state. Mt. Healthy City Sch. Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 280 (1977); Hoover Universal, Inc. 535 F.3d

at 303, see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).  To characterize the nature and relationship, the Court will consider all relevant statutes, regulations and constitutional provisions, as well as state court decisions that define the entity's character.  Md. Stadium Auth., 407 F.3d at 265.

Pennsylvania law clearly regards PHEAA as a state agency. PHEAA was created by amendment to the State Constitution, Pa. Const. art. III, § 29, "for the benefit of the people of the Commonwealth, for the improvement of their health and welfare, and for the promotion of economy."  24 P.S. § 5105.6.  All of PHEAA's limited powers and authority come from the General Assembly by statute.  24 P.S. § 5104.  Pennsylvania has exempted all of PHEAA's property, income, and activities from taxation, including income from issued bonds and notes.  24 P.S. §§ 5105.6, 5107.  PHEAA, like other state agencies, is subject to Pennsylvania's Sunshine Act and Right-to-Know law.  65 Pa. Cons. Stat. Ann. § 703; 65 Pa. Cons. Stat. Ann. § 67.102.  Employees of PHEAA are Commonwealth employees, bearing employment badges that state, "Commonwealth of Pennsylvania State Employee."  They receive pay from the Commonwealth Treasury and must participate in the State Employee's Retirement System and must have healthcare coverage from the Pennsylvania Employees Benefit Trust Fund.  PHEAA employees are members of the American

Federation of State, County and Municipal Employees ("AFSCME") union.  PHEAA's officers, managers, and Board members are "public officials" subject to the Pennsylvania Public Official and Employee Ethics Act.  65 Pa. C.S.A. § 1102.  Finally, Pennsylvania courts have held that PHEAA is an agency of the state.  See Richmond v. Pa. Higher Educ. Assistance Agency, 297 A.2d 544, 546 (Pa. Commnw. Ct. 1972); Pa. Higher Educ. Assistance Agency v. Reid, 15 Pa. D. & C.3d 661, 665-66 (Pa. Com. Pl. 1980) (holding that the conclusion that PHEAA is an agency of the Commonwealth is "inescapable"); Pa. Higher Educ. Assistance Agency v. Barksdale, 449 A.2d 688, 689 (Pa. Super. Ct. 1982) (holding that PHEAA is "undeniably an agency of the Commonwealth").  The fourth factor weighs heavily in favor of finding PHEAA to be an arm of the state.

VSAC is similarly an agency of the State of Vermont. VSAC's enabling legislation expressly provides that VSAC "shall be an instrumentality of the state" and designates it as "the state agency to receive federal funds assigned to the state of Vermont for student financial aid programs."  Vt. Stat. Ann. tit. 16, § 2823.  VSAC's limited powers are specifically enumerated by statute.  Id.  Similarly to PHEAA, VSAC is subject to Vermont's Open Meeting Law, which requires "[a]ll meetings of a public body are . . . to be open to the public at all times." Vt. Stat. Ann. tit. 1, § 312.  VSAC is also subject to Vermont's

Public Records Law, which requires VSAC, like other agencies, to provide public access to records and documents.  Vt. Stat. Ann. tit. 1, § 315-320.  Finally, like PHEAA, VSAC is exempt from all taxation, including taxation on income from bonds and notes issued by VSAC, "a body corporate and public of this state." Vt. Stat. Ann. tit. 16, § 2825.  Vermont law treats VSAC as an agency and the final factor supports finding VSAC to be an arm of the state.

For the aforementioned reasons this Court finds that each Defendant is an arm of their respective states.  Thus, neither Defendant is a person who may be sued under the False Claims Act.  Accordingly, this Court finds that summary judgment should be granted in favor of the Defendants.  An appropriate order shall issue.

_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January _16_, 2015