UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. JON H. OBERG,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br><br>　　　　Defendant. | CIVIL NO. 1:07-CV-960-CMH-JFA |

**MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID M. REICHER**

The Court should exclude the proffered expert opinions of Attorney David Reicher because those opinions would be entirely unhelpful to the jury, and there is a massive risk of confusion and prejudice if Reicher is allowed to opine to the jury concerning his *post-hoc* interpretation of the law—an interpretation that was never held by Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA")—as he plainly intends to do.

Reicher's ***only*** claimed qualification or expertise is that he has served for many years as a lawyer in private practice advocating on behalf of student loan companies like PHEAA. Unsurprisingly, his "Declaration" of the opinions he intends to offer comprises a 111-page legal tome with 174 footnotes, most of which are citations to legal authorities. But the jury's task will be to determine the facts and reach a verdict applying the law given by the Court, not to publish a law review article or determine what the law should be. In performing these tasks, Reicher's planned testimony will be decidedly unhelpful and counterproductive.

In denying summary judgment, the Court has already rejected PHEAA's assertion that its claims for 9.5% SAP were legally proper. But that is precisely the import of Reicher's proffered testimony. Allowing such testimony would improperly usurp the Court's function as the sole arbiter and source of the law to be applied and would be highly prejudicial and confusing rather than being helpful to the jury as required.

These dangers, which are recognized in the case law generally prohibiting "legal experts," are even more acute here because of Reicher's convoluted and idiosyncratic legal analyses, in which he postulates alternative "Broad" and "Narrow" interpretations of the statute and rejects selected actions by the Department of Education (namely 1996 and 2007 Dear Colleague Letters ("DCL")) as being either legally unnecessary or improper. Allowing testimony concerning these and other matters discussed at extraordinary length in Reicher's Declaration would at best cause unnecessary confusion, and at worst could lead the jury to improperly substitute Reicher's legal analyses for the Court's instructions. Moreover, receiving such testimony inevitably would waste inordinate amounts of the Court's and the jury's time on matters (*e.g.*, the relative merits of the "Broad" and "Narrow" statutory interpretations) that ultimately are not for the jury to decide.

Reicher's testimony also cannot be defended on the ground that it is somehow relevant to PHEAA's scienter. Neither the Declaration itself nor any other evidence suggests that PHEAA relied upon or was even aware of Reicher's legal opinions while it was submitting the false claims at issue (to the contrary, the evidence will be undisputed that PHEAA never obtained any legal opinions). Exhaustive testimony concerning what David Reicher thinks the law is or was or should be or reasonably could be—testimony that will invariably be biased given his position as an advocate—therefore has no bearing on PHEAA's state of mind when it was submitting its false

claims. In the demonstrated absence of any nexus to PHEAA's conduct, such testimony is irrelevant and inherently risks misleading or confusing the jury.

Finally, Reicher also submitted a comparatively succinct "Supplemental Declaration" (62 pages, exclusive of exhibits, with 130 footnotes) purporting to rebut the testimony of Relator's experts Jason Delisle, an education policy analyst, and Larry Weiner, an expert in the field of asset-backed and fixed-income securities. But Reicher's sole expertise is as a lawyer, and he has never practiced in the disciplines practiced by Delisle and Weiner. As such, he is not a proper witness to rebut their testimony, and in any event, his "rebuttal" relies heavily on the opinions set out in his main Declaration, which are inadmissible as set out above.

## I.     BACKGROUND

Reicher has been designated by PHEAA as a proposed expert on the statutory and regulatory framework applicable to the Federal Family Education Loan Program ("FFELP"). He has submitted an affirmative Declaration ("Opening Report"), Ex. 1, and a Supplemental Declaration ("Rebuttal Report"), Ex. 2, purporting to rebut the testimony of two of Relator's experts, Jason Delisle and Larry Weiner.

Reicher has been an attorney at the law firm of Foley & Lardner LLP for his entire career, and the only alleged source of expertise for his views is his long-time legal representation of various student loan companies and related entities, some of which were previous Defendants in this case.[1]  *See* Ex. 1 ¶¶ 1-4, 8-10; Ex. 3 at 7:20-21; 8:15-21; 25:4-28:9. In light of his background,

---

[1] Reicher has represented the Student Loan Finance Corporation, Southwest Student Services Corporation, at least one of either Brazos Higher Education Authority or Brazos Higher Education Service Corporation, and the Kentucky Higher Education Authority – all named, or under common control with, previous defendants in this proceeding. *See* Mem. Supp. Relator's Mot. to Exclude Rebuttal Test. of David M. Reicher (Dkt. 386) at 5.

Reicher has no claim to any objective policy expertise or any background in objectively assessing the statutory and regulatory framework underlying the FFELP.

Reicher's Opening Report—which is mostly copied and pasted from the report he submitted in 2010 on behalf of other Defendants,[2] *see* Ex. 3 at 73:3-18—consists of two substantive parts. Part III is a "chronology" that purports to summarize "important developments since 1965 that contribute to [Reicher's] own understanding of the application of the ½ SAP/Floor Loan provisions of the [Higher Education Act] and related regulations." Ex. 1 ¶ 18. Part IV consists of Reicher's legal opinions as to whether certain "practices PHEAA's counsel have asked [him] to consider . . . are consistent with a reasonable interpretation and application of" the key statutory and regulatory provisions at issue in this case. Ex. 1 ¶ 19.

Reicher has not considered PHEAA's actual conduct during the relevant time period, Ex. 3 at 40:9-21, 41:14-16, 54:6-13, nor does he have any "basis for knowing what PHEAA relied on" when it submitted claims for 9.5% SAP prior to December 31, 2006, Ex. 3 at 50:16-21. Reicher also admitted at his deposition that his interpretation of the statute and regulations was not the only "reasonable interpretation." *See, e.g.*, Ex. 3 at 304:22-305:21, 306:19-307:12 (stating in response to questions about the applicability of the 1993 OBRA that "[t]here could be more than one reasonable interpretation").

## II.   LEGAL STANDARD

In order to testify as an expert, a proposed witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Assuming that an expert is qualified, the substance of his or her testimony is admissible only if the following conditions are met: (i) his or her scientific, technical, or other specialized knowledge will assist the trier of fact

---

[2] The case against the other Defendants settled before trial so Reicher did not give trial testimony.

4

to understand the evidence or to determine a fact in issue; (ii) the testimony is based on sufficient facts or data; (iii) the testimony is the product of reliable principles and methods; and (iv) he or she has reliably applied the principles and methods to the facts of the case. *Id.* Legal knowledge generally is not, standing alone, the kind of "scientific, technical, or other specialized knowledge" that will assist a jury in finding the facts. *See Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531, 538 (D. Md. 2006) (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986)).

"The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)); *see also Bridgeman v. Deere & Co.*, No. 07-CV-613, 2009 WL 1344948, at *4 (E.D. Va. Feb. 13, 2009). As this Court has observed:

> A court's obligation is described as that of a "gatekeeper" in the preliminary determination of the admissibility of expert testimony. Under *Daubert*, such a role for a court is appropriate, given the potential for expert evidence to "…be both powerful and quite misleading."

*Smithers v. C&G Custom Module Hauling*, 172 F. Supp. 2d 765, 771 (E.D. Va. 2000) (citations omitted) (alteration in original); *see also Cooper*, 259 F.3d at 199.

Even where expert testimony is admissible under Federal Rule of Evidence ("FRE") 702, it still may be excluded under FRE 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005) (expert testimony may be excluded under FRE 403 to the same extent as other evidence).

### III. ARGUMENT

#### A. Reicher's Proposed Testimony Based Solely on His Background as a Practicing Attorney Is Fundamentally Legal In Nature And Should Be Excluded.

It is well established that expert testimony construing legal provisions or drawing legal conclusions is improper; rather, those tasks fall exclusively within the province of this Court. *See, e.g.*, *United States v. Wilson*, 133 F.3d 251, 265-66 (4th Cir. 1997) ("[T]he jury must be instructed on the law by the court and not by the witnesses. . . . [T]o maintain properly the court's role as the sole arbiter of the applicable law, the court should have taken steps to limit those witnesses' testimony generally to facts of history, practices and procedures followed by them in their work, opinions based on demonstrated expertise, and similar matters, but it should not have allowed them to give opinions on what the law means or how it is interpreted."); *Wood v. Credit One Bank*, No. 15-CV-594, 2017 WL 4203551, at *27 (E.D. Va. Sept. 21, 2017) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *accord United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge.") (citation omitted).[3]

---

[3] *United States v. Offill*, 666 F.3d 168 (4th Cir. 2011), is not to the contrary. In *Offill*, a criminal securities fraud case, the Fourth Circuit held that the District Court did not abuse its discretion in admitting the testimony of a securities law professor because "the specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices [made] it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury." *Id.* at 175. The Fourth Circuit did not, however, hold that it is permissible for an attorney expert to testify as to legal conclusions and thereby usurp the court's role. To the contrary, the Fourth Circuit emphasized that the District Court had acted within the bounds of its discretion to admit the testimony at issue (which was not objected to during trial) because it was limited to "the general operation of securities law" and to answering hypothetical questions that did not impermissibly

The risk of a proposed expert's testimony infringing upon the Court's function of interpreting the law is heightened where the proposed expert is a lawyer. As is evident from Reicher's list of "qualifications," *see* Ex. 1 ¶¶ 1-13, the *only* source of his knowledge is his experience as an attorney in a representative capacity. Reicher confirmed as much at his deposition. *See, e.g.*, Ex. 3 at 27:13-18 (Q: "Do you have any other professional qualification in terms of educational qualification, a master's degree, a Ph.D., something like that?" A: "No."); *id.* at 28:6-9 (Q: "So your opinions come out of your professional expertise as an attorney?" A: "My experience, correct."). Notably, Reicher has not published any articles on topics relevant to this action in at least the last *twenty* years. *See* Ex. 1 ¶ 13; Ex. 3 at 14:3-15:18; Ex. 4 ¶ 12.

For this reason, courts are particularly guarded when considering the proposed testimony of an attorney expert. *See, e.g.*, *MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp.*, 599 F. Supp. 2d 612, 623 (D. Md. 2009) (acknowledging "traditional wariness toward attorney experts" but permitting such testimony because trial was a bench trial); *Safeway, Inc.*, 423 F. Supp. 2d at 539 (finding that "[e]vidence supplied by experts as to legal conclusions is not admissible, 'nor indeed "evidence" at all'" and excluding report of proposed expert where the foundation of his testimony rested upon "*legal* knowledge drawn from [his] experience as a real estate attorney") (citation omitted) (emphasis in original); *accord Great Am. Ins. Co. v. Dover & Dixon, P.A.*, 402

---

comment on the defendant's state of mind in violation of FRE 704(b). *Id.* at 176-77. Unlike the testimony at issue in *Offill*, Reicher's testimony does not "arguably" state a legal conclusion, it does so blatantly.

Moreover, unlike *Offill*, and as PHEAA argued in its summary judgment motion, there are no factual disputes regarding how PHEAA increased its 9.5% Loan volume; the only questions are whether PHEAA's actions violated the law and whether PHEAA possessed the requisite scienter. Under *Offill*, such testimony from an expert is inadmissible. *See Offill*, 666 F.3d at 175 ("[W]e have held that it does not help the jury for an expert to give testimony that . . . draws a legal conclusion by applying law to the facts." (internal quotation omitted)).

F. Supp. 2d 1012, 1022 (E.D. Ark. 2005), *aff'd sub. nom. Great Am. Ins. Co. v. Dover, Dixon Horne, P.L.L.C.*, 456 F.3d 909 (8th Cir. 2006) ("This Court doesn't require or permit so-called 'legal experts' to advise it on legal issues.").

Despite these well-established principles, PHEAA seeks to introduce the testimony of a career attorney who intends to testify as to his personal views as to the way in which the relevant statutory and regulatory provisions should be interpreted. Reicher conceded that "obviously, when you go through my report, particularly the interpretive section of my report, there is a great deal of citation to statutes, public legislative history, testimony, regulatory developments, preambles to regulations . . . ."—or, in other words, citations to precisely the same kinds of materials that this Court had before it when it considered and denied PHEAA's Motion for Summary Judgment. Ex. 3 at 37:3-8. And Reicher intends to provide his interpretations of the statutory and regulatory provisions at issue even when those views are at odds with actions taken by the Department of Education. *See* Ex. 1 ¶ 98 (disagreeing that DOE's 1992 regulations "represented a change in prior guidance"); Ex. 3 at 233:21-234:15, 236:9-19 (testifying as to same); Ex. 1 ¶ 117 (opining that DOE's discussion of "first-generation loans" and "second-generation loans" in 2007 Dear Colleague Letter was "inconsistent with regulatory and administrative guidance and industry practice"); Ex. 3 at 70:11-21 (testifying as to same).

Some of the other proffered legal interpretations Reicher proposes to present to the jury include the following:

- "It is my opinion that it is reasonable to interpret the phrase 'funds obtained by the holder from the issuance of obligations' in the first sentence of [the 1980 Higher Education Act] broadly to include . . . not only the initial funds received on the date of issuance of the obligations, but also to include funds obtained from any subsequent receipts and income derived from those initially deposited funds." Ex. 1 ¶ 139.

- "It is my opinion that the Broad Interpretation of the first sentence of [the 1980 Higher Education Act] addresses the concerns that motivated the 1980 legislation, while the Narrow Interpretation does not." Ex. 1 ¶ 146.

- "I see no basis for interpreting the Statutory Source of Funds Language under clause (iv) relating to the 'originally issued on or after October 1, 1993' category of tax-exempt obligations differently from the Statutory Source of Funds Language under clause (i) relating to the 'originally issued before October 1, 1993' category of tax-exempt obligations." Ex. 1 ¶ 165.

- "Consistent with my application of a Broad Interpretation to the Statutory Source of Funds Language in Section 438(b)(2)(B)(i) of the HEA as described in Parts IV.C.2. and IV.C.5.a. hereof, it is my opinion that a Broad Interpretation of the version of Section 302(c)(3)(i) in the 1992 Regulations is not only a reasonable interpretation, but also is a more reasonable interpretation than a Narrow Interpretation." Ex. 1 ¶ 192.

Such legal testimony from a career lawyer is plainly inadmissible. *See, e.g.*, *Betts v. Benefit Sols., Inc.*, No. 13-CV-11772, 2015 WL 4772568, at *8 (S.D.W. Va. Aug. 12, 2015) ("Most curious to the Court . . . is that Mr. Bragdon appears to be offering not scientific or technical expertise, but legal expertise. . . . Mr. Bragdon introduces no factual evidence derived from his personal knowledge, instead he merely reviews the same record evidence before the Court and relatively few legal authorities, and on that basis, offers legal conclusions. Such conclusions are the province of the Court, not 'legal experts' retained by either party."); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. 14-CV-085, 2015 WL 11117171, at *6 (E.D. Wash. Nov. 30, 2015) ("[T]here is no reason for Port to testify at trial. Port's expert report amounts to no more than a legal brief in which he states what the law is and how it should be applied to the facts of the case. . . . [A]ll that Port has is legal expertise and as such, his opinion . . . amounts to no more than a legal conclusion.").

Even Reicher's supposed historical "chronology" in Part III of his Opening Report is rife with his own personal legal opinions. *See, e.g.*, Ex. 1 ¶ 53 ("It was not my understanding in 1980 and prior to the application of the 1993 Amendment (as hereinafter defined) to certain loans, that

9

it would have been reasonable for a State/nonprofit issuer to ignore the ½ SAP/Floor Loan provisions and treat loans made after October 1, 1980 with any funds constituting Pledged Assets of a tax-exempt SL Revenue Obligation as full SAP loans."). Such opinions, whether disguised as objective "historical" testimony or not, are outside of the bounds of permissible expert testimony and should be excluded. *See Wilson*, 133 F.3d at 265-66.

### B. Reicher's Legal Testimony Would Not Assist The Trier Of Fact Because It Would Provide Opinions Outside The Province Of The Jury.

In order to be admissible, expert testimony also must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. That is not the case here.

*First*, Reicher's testimony will have no bearing on whether PHEAA's claims were "false" under the FCA. Whether a claim is false is based on what *the Court* determines the law actually requires, not on whether the claim arguably falls within some alternative universe of purportedly reasonable interpretations. The Court already rejected PHEAA's arguments regarding falsity in denying its Motion for Summary Judgment; PHEAA cannot attempt to circumvent that ruling through the guise of expert testimony.

Moreover, Reicher's reports are premised upon his own legal views, formed as a result of his representation of student loan companies and related entities, as to what constitutes a "reasonable interpretation" of the key statutory and regulatory provisions at issue in this case. Not only is this core impermissible legal testimony, as discussed above, it has no impact on the disputed issues of fact that the jury will actually have to resolve at trial.[4] It should therefore be excluded. *See United States v. Cortez*, 205 F. Supp. 3d 768, 776 (E.D. Va. 2016) (Ellis, J.) (excluding proposed testimony of an attorney expert on Virginia state law because "[t]estimony that merely

---

[4] As discussed *infra*, Reicher's testimony would in fact risk *confusing* the jury on these issues and should also be excluded under Federal Rule of Evidence 403.

10

states a legal conclusion as to the meaning or application of a rule or statute is not 'helpful,' as required by Rule 702 . . . . Simply put, an expert telling a judge how to interpret a rule or statute does nothing more than give an attorney a redundant means of presenting legal argument to the Court.").

***Second***, with respect to scienter, Reicher's opinions have no bearing whatsoever on PHEAA's state of mind at the time it submitted its claims for 9.5% SAP. There is no evidence that PHEAA relied on the legal theories espoused by Reicher in his report, and Reicher admits that he has "no basis for knowing what PHEAA relied on." Ex. 3 at 50:20-21. Because PHEAA cannot demonstrate the absence of scienter by concocting a *post-hoc* legal interpretation that supports the purported reasonableness of its actions, *see* Relator's MSJ Opposition (Dkt. 810) at 41-44, Reicher's proposed testimony will not assist the jury in any way in determining whether PHEAA acted with the requisite scienter under the FCA. *See, e.g.*, *U.S. v. Newport News Shipbuilding, Inc.*, 276 F. Supp. 2d 539, 562 (E.D. Va. 2003); *see also U.S. v. Newman*, No. 16-CV-1169, 2017 WL 3575848, at *8 (D.D.C. Aug. 17, 2017) (Defendants can still have FCA scienter even if interpretation of regulations is reasonable); *U.S. ex rel. Chilcott v. KBR, Inc.*, No. 09-CV-4018, 2013 WL 5781660, at *6 (C.D. Ill. Oct. 25, 2013) (*post-hoc* reasonable interpretation does not preclude FCA scienter).

### C. The Nature Of Reicher's Proposed Testimony And His Status As A Lawyer Are Likely To Mislead The Jury.

Reicher's proposed testimony also should be excluded pursuant to FRE 403 because any probative value is far outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and massively wasting the Court's and the jury's time. *See Iskander*, 407 F.3d at 238.

Reicher's status as a lawyer and his past representation of student loan companies that engaged in the same wrongful conduct, including prior Defendants in this case, would almost certainly mislead and confuse the jury. Rather than looking exclusively to the Court for instructions on the law, as it must, the jury could believe that Reicher's purpose in testifying is to instruct them as to the content and meaning of the law (a subject on which he is clearly not permitted to testify). The "traditional wariness toward attorney experts" is heightened in such a situation. *MJ Harbor Hotel, LLC*, 599 F. Supp. 2d at 623. Limiting instructions and vigorous cross-examination would not cure the prejudice to Relator, as it will be impossible to un-ring the bell once the jury learns of Reicher's background and experience as an attorney.

Moreover, Reicher's proposed testimony risks misleading and confusing the jury as to what Relator must prove in order to prevail on his FCA claims. With respect to scienter, testimony regarding the "reasonableness" of a legal position that was never held by PHEAA at the time it was submitting its claims for 9.5% SAP can only serve to distract them from the factual issues they must resolve. With respect to falsity, testimony regarding Reicher's own independent views of the law could only serve to distract them from applying the law as instructed by this Court at the end of trial.

Put simply, Reicher's proposed testimony is precisely the kind of evidence that FRE 403 is designed to preclude.

### D. Reicher's Rebuttal Report Should Likewise Be Excluded.

Reicher's purported rebuttal of the expert reports of Delisle and Weiner suffers from the same flaws. Like his Opening Report, his Rebuttal Report is premised on acceptance of his personal views regarding the most "reasonable" way in which to interpret the applicable FFELP statute and regulations. For instance, while Reicher attempts to rebut Delisle's historical discussion of 1993 OBRA by stating that it "is not particularly helpful in interpreting the 1993

Amendment," he ignores the fact that, unlike his own reports, Delisle's report—which was authored by a non-lawyer policy expert—does not offer any legal conclusions as to how the law should be interpreted.[5]  Ex. 2 ¶ 85.  Similarly, Reicher's proposed rebuttal testimony in response to Weiner regarding the supposed reasonableness of maximizing 9.5% SAP depends entirely upon acceptance of Reicher's interpretation of the governing statute and regulations to permit the unlimited growth of 9.5% SAP using funds traceable to post-October 1, 1993 new money.  *See, e.g.*, Ex. 2 ¶¶ 151, 153, 155; Ex. 3 at 385:12-386:3 (acknowledging that "9.5 SAP was extremely valuable in a low interest environment" and testifying that "finding a way to bring in more valuable assets . . . would strike me as sound asset liability management").  Reicher's rebuttal only makes sense if his legal conclusions are accepted.  Because that is not the proper subject of expert testimony, he should be precluded from testifying.  *See Wilson*, 133 F.3d at 265-66.

      Moreover, although Reicher purports to rebut the testimony of Delisle, a public policy expert, and Weiner, an expert on asset-backed securities who has over thirty years of direct experience with fixed income securities markets, it is plain that Reicher does not possess commensurate experience in those areas.  *See, e.g.*, Ex. 3 at 360:3-22.  The fact that Reicher may have represented student loan companies as an attorney does not qualify him to opine on the matters addressed by Delisle and Weiner; representing clients in a legal capacity is fundamentally different from having direct experience in the field.  An attorney, for example, may represent surgeons, but one could not seriously argue that that attorney is therefore qualified as an expert in

---

[5] At his deposition, Reicher himself acknowledged the very point made by Delisle.  *See* Ex. 3 at 314:7-315:4 (in response to a question regarding the "fundamental purpose" of the 1993 OBRA, testifying that "[w]hat I would say is that the OBRA was part of a budget reconciliation package.  My understanding was that they were attempting to meet certain cost cuts based on whatever the budget parameters were, and the assumptions.  And this was done, among some other things, as a way to cut budget costs based on the assumptions that they were working with.").

surgery. *See, e.g.*, *Wright Asphalt Prod. Co., LLC v. Pelican Ref. Co.*, LLC, No. 09-CV-1145, 2012 WL 1936416, at *8-9 (S.D. Tex. May 29, 2012) (being a patent attorney does not qualify one as an expert in "the underlying technical questions" of patent law); *cf. In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-0318, 2013 WL 1855980, at *7 (D. Md. May 1, 2013) (being a law and economics professor does not qualify one as an expert in economics). In any event, Reicher's rebuttal report should also be precluded under FRE 403 for the same reasons stated above.

## IV. CONCLUSION

For the foregoing reasons, Relator's Motion to Exclude Expert Testimony of David M. Reicher should be granted, and Reicher should be precluded from testifying at trial.

Respectfully submitted,

 /s/ Stephen J. Obermeier
Bert W. Rein (admitted *pro hac vice*)
Michael L. Sturm (VSB # 27533)
Christopher M. Mills (VSB # 44358)
Stephen J. Obermeier (VSB # 89849)
WILEY REIN LLP
1776 K Street, NW
Washington, D.C. 20006
Phone: 202.719.7000
Fax: 202.719.7049
brein@wileyrein.com
msturm@wileyrein.com
cmills@wileyrein.com
sobermeier@wileyrein.com

October 13, 2017                                                  *Counsel for Relator Jon H. Oberg*

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on the 13th day of October, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Daniel B. Huyett, Esq.<br>Stevens & Lee P.C.<br>111 North Sixth Street<br>Reading, PA 19601 | Edwin John U, Esq.<br>Michael A. Glick, Esq.<br>Judson Brown, Esq.<br>Thomas P. Weir, Esq.<br>Tracie L. Bryant, Esq.<br>Kirkland & Ellis LLP<br>655 Fifteenth Street, NW<br>Washington, D.C. 20005-5793<br>United States |
| Neil C. Schur, Esq.<br>Stevens & Lee P.C.<br>1818 Market Street, 29th Floor<br>Philadelphia, PA  19103 | |
| Craig C. Reilly, Esq.<br>The Office of Craig C. Reilly<br>111 Oronoco Street<br>Alexandria, VA 22314 | Matthew T. Regan, Esq.<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL 60654 |

*Counsel for Pennsylvania Higher Education Assistance Agency*

 

                                              /s/ Stephen J. Obermeier
                                              Stephen J. Obermeier (VSB # 89849)
                                              WILEY REIN LLP
                                              1776 K Street, NW
                                              Washington, DC 20006
                                              Phone: 202.719.7465
                                              Fax:  202.719.7049
                                              sobermeier@wileyrein.com
                                              *Counsel for Relator Jon H. Oberg*